IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------x
                                    :
ORTHO BIOTECH PRODUCTS, L.P.,       :
                                    :
              Plaintiff,            :
                                    :   Civ. No.: 05-4850 (SRC-MAS)
        - v -                       :   In the District of New Jersey
                                    :
AMGEN INC. and AMGEN USA INC.,      :
                                    :
              Defendants.           :
                                    :
------------------------------------x
```

**PLAINTIFF ORTHO BIOTECH PRODUCTS, L.P.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
<u>COMPLIANCE WITH SUBPOENA ISSUED TO HEALTHCORE</u>**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Ortho Biotech Products, L.P.*

*Of Counsel:*

William F. Cavanaugh, Jr.
Erik Haas
Sarah E. Zgliniec
A. Leah Vickers
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Dated: May 16, 2008

{00217506;v1}

## INTRODUCTION

Plaintiff Ortho Biotech Products, L.P. ("Ortho") respectfully submits this memorandum of law in support of its motion to compel HealthCore, an affiliate of WellPoint, Inc., to produce (1) a witness to provide deposition testimony and (2) documents as requested in Plaintiff's February 29, 2008 subpoena.

Compliance with the subpoena is essential for two reasons. First, according to testimony already given in the case, Defendant Amgen Inc. ("Amgen") hired HealthCore to undertake an analysis of the comparative dose and cost of Ortho's drug, Procrit, and Amgen's competitor drug, Aranesp, to bolster Amgen's claim that Aranesp is the less expensive option. The truth or falsity of that contention goes to the very core of Ortho's antitrust allegations in this case, which include claims that Amgen's product is actually more expensive than Ortho's, but that Amgen structured its contracts to compel physicians to buy Amgen's product by tying it illegally to other products over which Amgen has a monopoly.

Second, upon information and belief, HealthCore shared its analysis of this issue with its parent company, WellPoint, Inc. – one of the largest medical insurers in the country. Testimony has established that WellPoint implemented a differential reimbursement schedule favorable to Ortho's drug, Procrit, over Amgen's drug, Aranesp, because it determined that Procrit was the less expensive choice. HealthCore's contribution to that decision of its parent company is similarly central to Ortho's antitrust claims.

## FACTS

A.   **Summary of the Case**

This is an antitrust action challenging Amgen's leverage of its legitimate monopoly power in one market to create an illegal monopoly in a second market. Amgen has a

{00217506;v1}                                                   1

monopoly in the market for the sale of white blood cell growth factor ("WBCGF") drugs to oncology clinics. Prior to Amgen's implementation of the contract at issue in this case, Amgen and Ortho engaged in vigorous price competition in the market for the sale of red blood cell growth factor ("RBCGF") drugs to oncology clinics. Amgen's two WBCGF drugs, Neupogen and Neulasta, are the only drugs approved by the FDA to treat the life threatening deficiency of white blood cells known as neutropenia, which often is a side effect of chemotherapy treatment. Amgen's RBCGF drug Aranesp and Ortho's RBCGF drug Procrit are both approved for the treatment of severe anemia, which also is associated with chemotherapy treatment.

Amgen's two WBCGF drugs are life saving drugs that oncology patients need and oncology clinics therefore must buy. Amgen intentionally structured the pricing on its WBCGF drugs to cause oncology clinics to lose money on administration of the WBCGF drugs to Medicare patients unless the clinics earn rebates under Amgen's oncology clinic contract, referred to as the "Amgen Portfolio Contract" or "APC." The rebates the clinics stand to earn are huge. Thus, oncology clinics lose money on WBCGF drugs if they fail to comply – but receive large payments if they comply – with the APC mandates. Amgen's APC contract violates the antitrust laws because it requires clinics to purchase Amgen's competitive RBCGF drug Aranesp in lieu of Ortho's RBCGF drug Procrit in order to receive the necessary and lucrative rebates on Amgen's WBCGF drugs.

By linking the incentives on its three drugs (Neupogen, Neulasta, and Aranesp), Amgen made it impossible for Ortho to price compete for oncology clinic RBCGF drug sales with incentives on its one drug Procrit. Amgen has obtained, and will continue to obtain, an illegal monopoly in the RBCGF drug oncology clinic market. As a result, Amgen has caused and is causing harm to Ortho and consumers.

The ultimate consumers of oncology drugs are the insurers that reimburse oncologists for the drugs (*e.g.,* Medicare and private insurers such as Aetna and WellPoint) and the patients who make coinsurance payments (or who lack insurance and bear the total cost of the drugs). Consumers are harmed by Amgen's illegal contract because, *inter alia*, it coerces oncologists to purchasing and administering Aranesp in lieu of the less costly Procrit. Amgen denies that Aranesp is more costly than Procrit, and the relative cost of these drugs is a hotly-contested issue in the antitrust case.

B.     **HealthCore's Relation to the Case**

HealthCore is related to the issues in the antitrust case by virtue of the fact that Amgen hired it as its consultant. Testimony has established that Amgen hired a number of consulting and research firms – including HealthCore – to analyze the relative cost of Procrit and Aranesp, as well as the actual doses of those drugs used by physicians. The results of that analysis, and whether they support Amgen's contention that Aranesp is the cheaper of the two drugs, go to the core of Ortho's antitrust claims.

Second, HealthCore is also related to this case in another way. HealthCore is a wholly-owned subsidiary of WellPoint, Inc., the largest health benefits company with the largest medical membership in the United States. *See* http://www.healthcore.com/history.html. On May 30, 2006, Dr. Randy Craig Axelrod – who was then employed by WellPoint – provided deposition testimony in the antitrust case. He testified, *inter alia*, that WellPoint had done an analysis of dosing and cost data for Procrit and Aranesp, and determined that Aranesp was in fact more expensive than Procrit, but that Amgen had priced Aranesp in a manner that would provide oncologists with higher profit margins than they would with Procrit. In other words, Dr. Axelrod testified that Amgen had created a pricing scheme that caused medical providers – who

are not the ultimate consumers – to purchase a drug that was more expensive to the ultimate consumers, such as WellPoint.

HealthCore is Wellpoint's strategic research arm, and states on its website that it enjoys "extensive access to medical and pharmacy claims information, laboratory result data and medical record data." *See* http://www. healthcore.com/history.html. Upon information and belief, HealthCore conducted an analysis of data concerning the actual usage of Procrit and Aranesp in patients, which WellPoint relied upon in determining the comparative cost of Procrit and Aranesp.

  **C.** **The Subpoena and HealthCore's Objections**

On October 31, 2007, Ortho issued a subpoena for documents and testimony from WellPoint. Subsequently, on February 29, 2008, Ortho issued the Subpoena at issue on HealthCore, which, upon information and belief, also possesses relevant information. (*See* Exhibit A to accompanying Declaration of Sarah E. Zgliniec ("Zgliniec Decl."))

The Subpoena at issue requests the production of documents relating to the doses of Aranesp and Procrit, the cost of the drugs to physicians and payors (such as WellPoint), and any communications that HealthCore or WellPoint had with Amgen on these issues, as well as any compensation paid by Amgen to HealthCore. The subpoena also seeks the deposition testimony of a HealthCore representative on these issues.

On March 14, 2008, counsel for HealthCore contacted Ortho's counsel, requesting an extension of time to respond to the subpoena, to which Ortho's counsel agreed. Several days later, HealthCore's counsel requested a further extension until April 1, 2008, to which Ortho again agreed. In its response, Ortho also proposed April 11 as the date for the deposition of HealthCore's witness. (*See* Exhibit B to Zgliniec Decl.)

HealthCore's counsel responded soon thereafter, confirming that it would respond to the subpoena by April 1. (*See* Exhibit C to Zgliniec Decl.) With respect to the deposition, HealthCore identified Gregory Daniels as its witness, and suggested that the deposition take place in early May to accommodate Mr. Daniels' schedule. (*Id.*) Ortho responded, proposing that the deposition occur any day during the week of May 5. (*See* Exhibit D to Zgliniec Decl.)

Instead of scheduling the deposition, on April 1, 2008, HealthCore responded with wholesale objections to the subpoena. (*See* Exhibit E to Zgliniec Decl.) Ortho responded that it disagreed (*see* Exhibit F to Zgliniec Decl.), and now seeks production of the requested documentation and testimony. Ortho has received no subsequent response from counsel from HealthCore on this issue.

Relatedly, Ortho also met and conferred with HealthCore's counsel throughout March and April on the issue of Ortho's subpoena to WellPoint, HealthCore's parent. (HealthCore and WellPoint are represented by the same counsel.) To date, WellPoint has also refused to make any production under that subpoena, and Ortho has recently moved to compel production under that subpoena in the District Court for the Southern District of Indiana, where WellPoint is located.

Having reached an impasse with counsel on all issues concerning both WellPoint and HealthCore, Ortho now moves to compel HealthCore's compliance with the Subpoena.

### ARGUMENT

I.  **Legal Standard**

Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure provides that "[a]t any time, on notice to the commanded person, the serving party [of a subpoena] may move the issuing court for an order compelling the production or inspection." Pursuant to Rule 45(c)(3)(A) & (B), the subject of a subpoena may be relieved from compliance only if, as

relevant here, the subpoena would: (1) "require[] disclosure of privileged or other protected matter, if no exception or waiver applies;" (2) subject the respondent "to undue burden;" or (3) require disclosure of a trade secret or other confidential commercial information.

## II. Ortho's Subpoena Seeks the Production of Information and Testimony Central to Ortho's Case, and None of the Exceptions to Rule 45 Apply

HealthCore has made no claim that the production Ortho seeks is of privileged, trade secret, or confidential commercial information. Its sole objection, then, is of burden – and even that it has not established.

The burden on HealthCore to produce the analyses it conducted for its client, Amgen, about the discrete issues relating to the dosing and cost of Aranesp and Procrit, should constitute no significant burden at all. Moreover, any burden that may exist is outweighed by the significance of this evidence in the antitrust case. The question of whether Aranesp is indeed more costly than Procrit is a key issue in the case: HealthCore's analysis of whether Ortho's Procrit is less costly than Amgen's Aranesp is the same analysis that the factfinder in the antitrust case will ultimately employ. The results of HealthCore's analysis of that issue *for Amgen*, one of the parties in the case, could not be more relevant.

In addition, any analyses of the issue that HealthCore did for its parent, WellPoint, are similarly of central importance in this case. The evidence in the case has demonstrated that HealthCore's parent, WellPoint, implemented a differential reimbursement policy favoring Procrit, Ortho's RBCGF drug, based on its determination that Procrit is the less costly of the two RBCGF drugs available for the treatment of chemotherapy-related anemia. Upon information and belief, HealthCore contributed analysis to WellPoint's determination that Procrit was the less expensive drug. That analysis is not in the possession of any party in the

case. As such, Ortho seeks an order compelling HealthCore to produce the subpoenaed information and testimony about it.

## CONCLUSION

For the reasons stated above, Ortho respectfully requests that the Court grant Ortho's motion to compel HealthCore to comply with the Subpoena.

ASHBY & GEDDES

/s/ *Tiffany Geyer Lydon*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff Ortho Biotech Products, L.P.*

*Of Counsel:*

William F. Cavanaugh, Jr.
Erik Haas
Sarah E. Zgliniec
A. Leah Vickers
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000

Dated: May 16, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2008, the attached **PLAINTIFF ORTHO BIOTECH PRODUCTS, L.P.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA ISSUED TO HEALTHCORE** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Maya Eckstein, Esquire<br>Hunton & Williams LLP<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond VA  23219-4074 | <u>VIA ELECTRONIC MAIL<br>and FEDERAL EXPRESS</u> |

/s/ *Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

{00217480;v1}